A00A2549. JACKSON v. THE STATE.
(543 SE2d 770)

MIKELL, Judge.

A Clayton County jury convicted David Dequanta Jackson and his brother, Dudley Morton, of criminal attempt to commit armed robbery, carrying a concealed weapon, and carrying a pistol without a license. Jackson appeals from the denial of his motion for new trial. We affirm.

---

[3] See *Grovenstein v. State*, 233 Ga. App. 230, 231-232 (504 SE2d 24) (1998).

1. In two enumerations of error, Jackson contends that the trial court erred in denying his motion for a directed verdict of acquittal.

A directed verdict of acquittal should be granted only when there is no conflict in the evidence, and the evidence, with all reasonable deductions and inferences, demands a verdict of acquittal as a matter of law. OCGA § 17-9-1 (a); *Gunter v. State*, 237 Ga. App. 863 (517 SE2d 105) (1999). The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether, under the rule set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Id. On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and the evidence must be viewed in the light most favorable to the verdict. Moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Mincey v. State*, 237 Ga. App. 463, 464-465 (2) (515 SE2d 433) (1999).

Viewed in this light, the transcript reveals that on December 17, 1998, the defendants entered a NationsBank branch in Clayton County. Betty Jo Grossnickle, the head teller, testified that despite the moderate weather, the defendants were wearing heavy ski jackets with hoods tied tightly around their heads. The defendants were standing at a table, holding brochures, and looking around. The branch manager, Laura Stewart, testified that she saw them at the customer service sign-in podium. When she approached them to offer assistance, they seemed "surprised." Jackson kept his face turned away from her. Morton inquired about opening an account, which the manager explained could not be done at that branch. The defendants did not leave. Stewart felt uncomfortable because her office was isolated, so she called Grossnickle to sit nearby. The defendants walked to a teller line on the far side of the bank and asked for a deposit slip. The teller testified that she asked for an account number. Although Morton held an account, he could not recall the number. The defendants took the deposit slip and left.

Grossnickle testified that the defendants had stayed in the bank for ten to fifteen minutes. When she observed the defendants return a few minutes later, she alerted Stewart, who set off the alarm. Grossnickle testified that Jackson's jacket pocket was bulging and he kept his hand in it. She believed he had a gun and that the defendants were preparing to rob the bank.

Stewart testified that she met the defendants at a point inside the front door where their images could be captured on the surveillance camera. They asked again for information about opening an account. After Stewart gave them the same information she had previously, she asked if they wanted anything else. They replied no and

left. Stewart testified that she closely examined their physical appearance so that she could relate it to the police later. The police arrived, and Grossnickle pointed them in the defendants' direction.

Captain Scott D. Martin and Detective Alex Manning spotted the defendants on the street nearby and approached them with their guns drawn. Manning searched them and found a loaded nine millimeter Lorcin in Jackson's pocket. Shortly after taking them into custody, Detective Manning discovered that her wallet was missing. The officers returned to the spot where they had encountered the defendants and saw a piece of paper blowing across the road. It was a NationsBank deposit slip, bearing Morton's fingerprints, which read: "no shit . . . give me the money, no dye pack . . . you are scared . . . all of it . . . all of it." A similar note was found in a car parked nearby that was registered to the defendants' mother. The note stated: "Nothing funny, I have two guys watching you, please give me all your money and no one would get hurt. Keep both your hands where I can see them."

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon." OCGA § 16-8-41 (a). A person commits the offense of criminal attempt when, "with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. Jackson argues that the absence of a threat or demand for money inside the bank mandates reversal of his conviction. We disagree.

> To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it cannot accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case.

(Citations and punctuation omitted.) *Adams v. State*, 178 Ga. App. 261, 263 (2) (b) (342 SE2d 747) (1986). In *Adams*, the defendant had discussed the method by which he intended to commit armed robbery and drove to the location, a hotel. He was apprehended in the parking lot before he had an opportunity to find a victim. The defendant was armed with a handgun, and his face was covered with two stocking masks. We held that his actions constituted substantial steps toward the commission of armed robbery. Similarly, in the instant case, we hold that the jury was authorized to find that Jackson's actions in entering the bank with a loaded, concealed weapon,

attempting to hide his face, and casing the premises, coupled with the circumstantial evidence of his possession of a demand note, are inexplicable under the circumstances as lawful acts and are more than mere preparation.

Accordingly, we conclude the transcript reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that Jackson was guilty of attempted armed robbery, carrying a concealed weapon, and carrying a pistol without a license. *Jackson v. Virginia*, supra. It follows that the trial court did not err by denying Jackson's motion for a directed verdict of acquittal.

2. Jackson also enumerates as error the trial court's refusal to give his requested charges on "bare suspicion" and "two theories." The latter charge states that where all the facts and circumstances of the case and all reasonable deductions present two equal theories, one of guilt and the other of innocence, then the jury must acquit the accused. However, "this statement of law does not accurately state the principle addressed and should never be given." *Johnson v. State*, 210 Ga. App. 99, 102 (2) (435 SE2d 458) (1993), citing *Langston v. State*, 208 Ga. App. 175 (430 SE2d 365) (1993). In any event, when the jury charge given substantially covers the principles in the requested charge, it is not error to fail to give the requested charge. *Stephens v. State*, 214 Ga. App. 183, 185 (3) (447 SE2d 26) (1994). In the case sub judice, the trial court correctly charged the jury on the law of circumstantial evidence, the presumption of innocence, and the need to prove Jackson's guilt beyond a reasonable doubt. Under these circumstances, it was not error to refuse to give the "two theories" charge. Id.; see also *Ward v. State*, 271 Ga. 648, 653 (7) (b) (520 SE2d 205) (1999).

In addition, since the trial court gave complete instructions on reasonable doubt and the presumption of innocence, the court did not err in refusing to give the requested charge on bare suspicion. *Lowe v. State*, 267 Ga. 180, 181 (2) (476 SE2d 583) (1996); *Kennedy v. State*, 205 Ga. App. 152, 156 (5) (d) (421 SE2d 560) (1992).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED DECEMBER 11, 2000.

*Robert H. Suttles*, for appellant.

*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.